Taliaeerro, J.
The plaintiff, who owns a plantation in the parish of St. John the Baptist, near the point ou the Mississippi river where a large crevasse in the levee occurred on the nineteenth of April, 1871, alleges that he sustained great damage and loss from the overflow of his plantation and consequent destruction of his crop that year, result *135 ing from the crevasse. He alleges that the loss and injury he has suffered arose from the culpable neglect of the Louisiana Levee Company in failing to cause the weak and defective condition of the levee at the place where the crevasse occurred to be repaired and strengthened in time before the rise of the river, so as to prevent the break that occurred and secure the adjacent plantations from being submerged with water. He estimates his loss at forty-nine thousand dollars, and brings this action to recover that sum from the Levee Company.
The answer is a general denial. The company specially deny that they were bound under their contract with the State to repair, strengthen or reconstruct, at the time alleged in the petition, the levee therein described, and that they are not answerable for the damages, if any, which the plaintiff may have sustained from the cause by him alleged.
There was judgment in the court below in favor of the Levee Company, and the plaintiff has appealed.
We find by referring to the laws passed in 1871 on the subject of levees, that the Louisiana Levee Company formed itself into a corporation, under the general laws of the State, on the eleventh day of February, 1871. Acts of 1871, p. 29. That this act was confirmed by the Legislature on the twentieth of February of the same year. Acts of 1871, p. 29, By the act approved February 20, section 2, p. 33, it is declared that “the Louisiana Levee Company shall take charge of, manage, control, construct, maintain, repair and keep in repair all the levees in this State on the Mississippi river, its tributaries and outlets,” etc. In the following section, p. 34, it is provided that “ said corporation shall have full right and authority, at all times to enter upon and occupy as far as necessary, by their surveyors and engineers, contractors, agents and servants, together with all necessary carts, animals, tools, materials and equipments, all such lands as may be necessary, and to remain as long as may be necessary for the purpose of doing and performing all aud singular matters and things required to be done and performed in and about the inspecting, building, construction, maintenance, repairing and management of the levees as aforesaid,” etc.
The powers granted to the Levee Company over the entire subject are ample and exclusive. But the purpose of the law is clearly that the work of constructing, repairing and strengthening the levees, shall be done under plans, surveys, measurements and directions, to be furnished by a board or commission of engineers for the appointment of which the law provides in act No. 4, acts of 1871, page 33. Section one recites, “ that in order to maintain a uniform and perfect system, *136 the location and dimensions of all levees to be constructed, maintained, repaired, and kept in repair and managed, shall be determined by a commission of three engineers, to be appointed as follows, to wit: One by the Governor of the State of Louisiana, who is hereby authorized and directed to appoint said engineer within thirty days after the acceptance of the terms of this act by the said company as hereinafter provided ; one by the Louisiana Levee company and one by the government of the United States. It shall be the duty of said commission, and they are hereby directed to determine the proper location and dimensions of all levees to be constructed, repaired or strengthened by the said corporation, and the standard of dimensions to which they shall be maintained by said company, and to report the same with maps and profiles thereof, and the number of cubic yards to be built in the construction of new levees, and in the strengthening, enlarging and repairing the levees now in existence, to the Secretary of War, the Governor of the State and the president of said company, which report shall be made in sections of five miles or more of said levees.” Section four of the same act provides, “ that said corporation shall, within sixty days from the receipt of the report of said commission, commence the construction of said levees,” etc. Section five recites, “ that on and after the completion of any and all sections of said levee, said company shall maintain the same up to the standard dimensions required by the report of said commission, and in the event of said corporation failing or neglecting to do so, it shall be liable in damages to any person or persons injured by such neglect and failure; provided, that said corporation shall in no case be liable where such injury shall be caused by, or said failure shall result from, acts of violence of men, the wrongful acts of individuals, the existence of obstacles interposed by the action of courts, or the operation of causes over which said company can have no control, or on account of the floods rising above the standard height determined by said commission.”
The acceptance and ratification of the act forming the contract between the State and the company took place on the twenty-eighth of February, 1871. Acts of 1871 — act 27, page 64.
Section ten of the act of twentieth February, 1871, page-37, clothes the company with the power of obtaining from a court of competent jurisdiction a writ of maudamus commanding any officer of the State who may fail, neglect or refuse to do any of the matters or things he shall be required to do by the provisions of this act, to do and perform the matter or thing so required of him.
We see then by a review of the several provisions of the acts relar ting to the construction and repair of the levees, that although the company is invested with very general control and management of *137 the entire subject of levees, yet this- general supervision and control is subordinated to those clauses and sections of the different acts which require the company to perform the work of constructing and repairing in conformity with the plans and directions afforded them by the Board of Engineers, after surveys and measurements made by them. An engineer, it is seen, was to be appointed within thirty days after the acceptance of the act by the company.
The acceptance was made on the twenty-eighth of February. The appointment then was to be made within thirty days or prior to the last day of March. But no engineer was appointed within the thirty days as required, nor was an appointment made until September following.
The crevasse took place on the seventeenth of April.
It seems clear that the company was at that time without power to act. No engineer was appointed. The Governor had the entire month of March within which to make, the appointment, with the exception of the last day of that month. The company could only proceed by mandamus after the expiration of the thirty days within which the Governor had to appoint. Only twenty days intervened between the expiration of that delay and the occurrence of the crevasse. A reasonable time would have been required for the survey of the work and the report, before which the company could not proceed to execute the work. Within that brief space of time it is manifest the company could not, in pursuance of the rules and requirements of law, have performed the work. No responsibility, therefore, rested upon them for not repairing and strengthening the levee at the point where the crevasse happened.
The decree of the lower court we think correct.
Judgment affirmed.
Rehearing refused.